**ORLANDO FOOD CORP.,**
**Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–Appellant.**

**No. 97–1335.**

United States Court of Appeals,
Federal Circuit.

April 6, 1998.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz & Silverman, LLP, New York City, argued for plaintiff-appellee. With him on the brief were Peter W. Klestadt, Robert B. Silverman, and Erik D. Smithweiss.

Mikki Graves Walser, Attorney, Civil Division, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice, New York City, argued for defendant-appellant. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Mark G. Nackman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City.

Before CLEVENGER, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

CLEVENGER, Circuit Judge.

In this classification case, the government appeals from the decision of the Court of International Trade granting summary judgment for Orlando Food Corp. ("Orlando"). *Orlando Food Corp. v. United States*, No. 94–03–00140, 1997 WL 68245 (Ct. Int'l Trade Feb. 10, 1997).[1] The Court of International Trade determined that Orlando's imported product was classifiable under either: (1) the Harmonized Tariff Schedule of the United States ("HTSUS") heading 2103, "Sauces and preparations therefor; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard" ("Sauces and preparations therefor"), subheading 90, "Other," dutiable at the rate of seven and one-half percent ad valorem, or (2) HTSUS heading 2002, "Tomatoes prepared or preserved otherwise than by vinegar or acetic acid" ("Tomatoes prepared or preserved"), subheading 90, "Other," dutiable at the rate of one-hundred percent ad valorem. Because the product was classifiable under two headings, the court concluded that, under the rule of relative specificity, the product should be classified under HTSUS 2103.90, "Sauces and preparations therefor: other," because it was the more specific of the two headings. *See Nestle*, 18 Ct. Int'l Trade at 662. The government argues that the court erred in its analysis, and that the goods should be classified under HTSUS 2002, "Tomatoes prepared or preserved." Although we agree with the government that the court erred in its analysis, the court nevertheless reached the correct conclusion. We therefore affirm the decision of the Court of International Trade.

## I

■ We review a grant of summary judgment for correctness as a matter of law. *See*

*Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994). A classification decision requires two steps. The first step concerns the proper meaning of the tariff provisions, which we review without deference. *See Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491 (Fed.Cir.1997). The second step concerns whether merchandise falls within a particular tariff provision, as properly interpreted, and this step is a question of fact that we will not disturb absent clear error. *See id.*

## II

The product at issue in this case is a canned tomato product consisting of approximately sixty percent whole, peeled tomatoes and forty percent tomato puree by weight, as well as salt, citric acid, and basil leaf. Orlando sold the product to the Nestle Company, which used the product to produce finished tomato sauces including Contadina brand Marinara and Plum Tomato sauces.

The proper classification of merchandise entering the United States is directed by the General Rules of Interpretation ("GRIs") of the HTSUS and the Additional United States Rules of Interpretation. The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category. At issue in this case are two headings of the HTSUS and their accompanying subheadings, which provide in relevant part:

Chapter 20

| | |
|---|---|
| 2002 | Tomatoes prepared or preserved otherwise than by vinegar or acetic acid: |
| 2002.10.00 | Tomatoes, whole or in pieces |
| 2002.90.00 | Other |
| | Paste |
| | Puree |

1. The Court of International Trade had previously addressed the issue of classification of a substantially identical product in *Nestle Refrigerated Food Co. v. United States*, 18 Ct. Int'l Trade 661, 1994 WL 405009 (1994), *dismissed and remanded* 64 F.3d 674 (Fed.Cir.1995) (table), and the parties reached a settlement agreement while appeal to this court was pending. In the instant case, the Court of International Trade adopted the analysis of its *Nestle* decision and granted summary judgment for Orlando. *See Orlando Food Corp. v. United States*, No. 94–03–00140, slip op. at 5, 1997 WL 68245 (Ct. Int'l Trade Feb. 10, 1997). Therefore, in reviewing the judgment in *Orlando*, we refer to the court's analysis in *Nestle*.

Chapter 21

| | | |
|---|---|---|
| 2103 | Sauces and preparations therefor; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard: | |
| 2103.10.00 | Soy sauce | |
| 2103.20 | Tomato ketchup and other tomato sauces: | |
| 2103.20.20 | Tomato ketchup | |
| 2103.20.40 | Other | |
| 2103.30 | Mustard flour and meal and prepared mustard: | |
| 2103.90 | Other: | |
| 2103.90.20 | Sauces derived or prepared from fish | |
| 2103.90.40 | Nonalcoholic preparations of yeast extract (other than sauces) | |
| *2103.90.60* | *Other* | |

According to GRI 1, the HTSUS headings, as well as relative section or chapter notes, govern the classification of a product. In other words, a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading. Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise. *See* GRI 1, 6. Furthermore, when determining which heading is the more specific, and hence the more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings. *See* GRI 1, 3.

The Court of International Trade's analysis contradicted GRI 1 twice: first, it construed only the language of the subheadings rather than the language of the headings in classifying the product; and second, in attempting to classify the merchandise under the more specific provision, it compared two subheadings under disparate headings for specificity, rather than the relevant headings. In conducting its analysis, the court first examined subheading 2002.10.00, "Tomatoes in pieces," which is a subheading of heading 2002, "Tomatoes prepared or preserved," and concluded that the presence of the tomato puree and seasonings rendered the product more than tomatoes in pieces. *See Nestle*, 18 Ct. Int'l Trade at 667. Therefore, it deemed this subheading inapposite. *See id.* However, the court found the "Other" subheading under the same heading for prepared or preserved tomatoes, HTSUS 2002.90.00, to

be an adequate description of the product for classification purposes. *See id.* at 676. In addition, the court found that the product was classifiable under subheading 2103.90.60, "Other," which appears under heading 2103, "Sauces and preparations therefor." *See id.* The court then compared the two subheadings and determined that subheading 2103.90.60, "Sauces and preparations therefor: other," was more specific and hence should govern. *See id.* at 677.

## III

Because the court erred by failing to adhere to GRI 1, which requires that goods be classified according to the language of the headings, we undertake the analysis anew. A classification analysis begins, as it must, with the language of the headings. *See* GRI 1. The parties present us with two potential headings: HTSUS 2002, "Tomatoes prepared or preserved," and 2103, "Sauces and preparations therefor."

The United States urges that the product at issue is classifiable under the heading for prepared or preserved tomatoes, despite the presence of basil, salt and citric acid. In support of this assertion, the government points to decisions of our predecessor court that construed the term "prepared" to encompass additional ingredients. *See B. Westergaard & Co. v. United States*, 19 C.C.P.A. 299, 300–04, 1932 WL 2218 (1932) (concluding that meat balls and fish balls containing vegetable binder were classifiable as prepared meat and prepared fish); *United States v. A. Sahadi & Co. Inc.*, 23 C.C.P.A. 293, 294, 299–300, 1936 WL 2982 (1936) (classifying sheets of dried apricot pulp smeared with olive oil as apricots prepared or preserved rather than fruit paste or pulp). We agree that the heading for prepared or preserved tomatoes encompasses Orlando's product, despite the presence of incidental spices. The term "prepared" suggests, but does not require, the addition of incidental ingredients that do not affect the essential character of the product. Although the addition of the seasonings sets the product apart

from unseasoned canned tomatoes, it hardly changes the essential tomato character of the product. Therefore, the product may be classified under HTSUS 2002, "Tomatoes prepared or preserved."

Next, we turn to the provision that Orlando promotes, HTSUS 2103, "Sauces and preparations therefor." The Orlando product is used solely as an advanced base or preparation for sauces. *See Nestle,* 18 Ct. Int'l Trade at 675. The United States has pointed to no other possible use for a product comprised of whole tomatoes, tomato puree, basil, salt, and citric acid, and certainly none spring immediately to mind. Therefore, the product is also classifiable under HTSUS 2103, "Sauces and preparations therefor."

■■■ According to GRI 3(a), when a product is prima facie classifiable under two or more headings, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a). Therefore, classification of the product turns on which of these two provisions is the more specific. Under this so-called rule of relative specificity, we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty. *See United States v. Siemens Am., Inc.,* 68 C.C.P.A. 62, 653 F.2d 471, 477 (CCPA 1981); *United States v. J. Gerber & Co.,* 58 C.C.P.A. 110, 436 F.2d 1390, 1392 (CCPA 1971). Our analysis is also guided by the general rule of customs jurisprudence that, "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision." *Siemens Am.,* 653 F.2d at 478. Resort to this aid to statutory construction is not obligatory, however, as it is merely a *"convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance." Id.* at 478 n. 6 (quoting *United States v. Simon Saw & Steel Co.,* 51 C.C.P.A. 33, 40, 1964 WL 8553 (1964)) (internal quotation marks omitted).

We conclude that HTSUS 2103, which provides for preparations for sauces, is more specific than HTSUS 2002, which covers prepared and preserved tomatoes. Initially, it is clear that the requirements of the sauce provision are more difficult to satisfy, because producing a preparation for a sauce necessarily involves some degree of processing or addition of ingredients. In contrast, although the provision for prepared or preserved tomatoes encompasses tomato products which have been processed, such as the product at issue, it mandates only minimal processing incident to preserving the tomatoes. Therefore, because the requirements of the sauce preparation provision are more difficult to satisfy, it is the more specific heading, and under the rule of relative specificity, it governs the classification of the Orlando product.

Employing the maxim that a use provision is more specific than an *eo nomine* provision gives the same result. HTSUS 2002, "Tomatoes prepared or preserved," is clearly an *eo nomine* provision, *i.e.,* "it describes a commodity by a specific name, usually one common in commerce." *Nidec Corp. v. United States,* 68 F.3d 1333, 1336 (Fed.Cir.1995). HTSUS 2103, "Sauces and preparations therefor," may be understood as a use provision, at least insofar as it covers "preparations" for sauces. Inherent in the term "preparation" is the notion that the object involved is destined for a specific use. The relevant definition from *The Oxford English Dictionary* defines "preparation" as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences." 12 *The Oxford English Dictionary* 374 (2d. ed.1989). The inclusion of the term "preparation" in HTSUS 2103, "Sauces and preparations therefor," clearly contemplates that some of the products falling within the provision's reach will be used to make sauces. Consequently, HTSUS 2103 is a use provision, insofar as it provides for preparations for sauces. Therefore, under our general rule that a use provision is by nature more specific than an *eo nomine* provision, HTSUS 2103,

"Sauces and preparations therefor," is more specific than HTSUS 2002, "Tomatoes prepared or preserved." Thus, the Orlando product is appropriately classified under HTSUS 2103.

Finally, even were we unable to determine which provision is more specific by employing either of the foregoing analyses, we would still reach the same result by consulting GRI 3(c), which provides that if a determination of relative specificity is not possible, goods should be classified according to the heading which occurs last in numerical order. HTSUS 2103, "Sauces and preparations therefor," is subsequent to HTSUS 2002, "Tomatoes prepared or preserved," and therefore under GRI 3(c), the Orlando product is properly classified under HTSUS 2103, "Sauces and preparations therefor."

Having classified the product under the appropriate heading, we now turn to the subheadings. *See* GRI 6. During the course of examining subheading 2103.20, "Tomato ketchup and other tomato sauces," the Court of International Trade concluded, and we agree, that a product is a sauce "if it can be used 'as is,' i.e. the product can be eaten as an accompaniment to other foods to make such foods more flavorful and palatable." *Nestle,* 18 Ct. Int'l Trade at 671. In addition, to constitute a tomato sauce, a sauce must contain "characterizing ingredients such as pepper, onions, vinegar, sugar, basil, oregano ... in quantities that materially alter the flavor, aroma, texture and consistency of the tomato component." *Id.; see* United Nations Food and Agriculture Organization and World Health Organization, 1 *Codex Alimentarius* 105 (Codex Standard for Processed Tomato Concentrates, 57–1981) (1981) (describing a tomato sauce as a product which is highly seasoned with spices such as pepper, onions, vinegar, and sugar in quantities that materially alter the taste of the tomato component). To determine whether the Orlando product fit within the subheading for tomato sauces, the court examined a variety of the product's features, including ingredients, flavor, aroma, texture, consistency, actual and intended use, and marketing.

*See Nestle,* 18 Ct. Int'l Trade at 671. The court found that, although the Orlando product had the visual appearance of a sauce, its flavor was not one of a true tomato sauce. The tomato flavor was essentially unaltered by the addition of the basil and salt, according to the court. *See id.* at 672–73. In short, the court found that the Orlando product was not fit for use as a sauce. *See id.* at 673. In addition, the court noted that the product was neither marketed nor actually used as a sauce, but as a base for a sauce. *See id.* at 674. Because we discern no clear error in the court's finding that the Orlando product is not a sauce, we defer to it.

Upon rejecting the subheading for tomato sauce, the Court of International Trade resorted to the catch-all subheading, HTSUS 2103.90.60, "Other," because the remaining subheadings are inapposite as they involve mustard flour, sauces derived or prepared from fish, or nonalcoholic preparations of yeast extract. Absent a more apt subheading under HTSUS 2103, we agree that HTSUS 2103.90.60, "Sauces and preparations therefor: Other," is the appropriate classification for the Orlando product.

IV

Utilizing the appropriate analysis for classification of goods under the HTSUS, we reach the same conclusion as the Court of International Trade. Consequently, the errors occurring in the course of the court's analysis were harmless, and the appealed decision is therefore

*AFFIRMED.*