# United States Court of Appeals for the Federal Circuit

---

**NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2093

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00131-SAV, Judge Stephen A. Vaden.

---

Decided: May 9, 2025

---

JOHN M. PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by PATRICK KLEIN; RICHARD F. O'NEILL, Seattle, WA.

BRANDON ALEXANDER KENNEDY, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; FARIHA KABIR, Office of Assistant Chief Counsel, International Trade Litigation, United States Department of Homeland Security, New York, NY.

———————

Before HUGHES and STARK, *Circuit Judges,* and SCHROEDER, *District Judge.*[1]

HUGHES, *Circuit Judge.*

Nature's Touch Frozen Foods (West) Inc. imported frozen fruit mixtures[2] into the United States from Canada. The United States Customs and Border Protection classified the merchandise under subheading 0811.90.80 ("Fruit . . . frozen . . . other") of the Harmonized Tariff Schedule of the United States, and Nature's Touch protested the determination. Following the denial of its protest, Nature's Touch initiated suit in the Court of International Trade, which granted the government's motion for summary judgment and upheld the classification. Because we agree that the common meaning of "fruit" encompasses "mixed fruit" and that "other" is properly interpreted as constituting a catch-all provision, we affirm.

I

A

Nature's Touch imports fruits and vegetables to its facility in Canada where it cleans, combines, and packages the fruits and vegetables into frozen mixtures for export to the United States. Apart from some frozen blueberries, all fruits and vegetables arrive at Nature's Touch's facility

———————

[1]    The Honorable Robert W. Schroeder III, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

[2]    Five of the fourteen mixtures at issue also contain vegetables but are referred to as "frozen fruit mixtures" by both parties. J.A. 10–11.

already cut and frozen. The resultant mixtures contain only fruits and vegetables—no other ingredients are included.

This case involves fourteen different frozen fruit mixtures, five of which also include frozen vegetables. *Nature's Touch Frozen Foods (W.) Inc. v. United States*, 639 F. Supp. 3d 1287, 1294 (Ct. Int'l. Trade 2023); J.A. 8–9. The specific combinations of frozen fruit and vegetables are:

(1) Frozen Strawberry/Banana: 52% strawberry, 48% banana

(2) Frozen Berry Mix: 22% blueberry, 32% strawberry, 28% blackberry, 18% raspberry

(3) Frozen Triple Berry: 34% blueberry, 33% blackberry, 33% raspberry

(4) Organic Mixed Berry: 35% strawberry, 25% blackberry, 25% blueberry, 15% raspberry

(5) Organic Very Berry Burst: 30% strawberry, 30% blackberry, 30% blueberry, 10% raspberry

(6) Organic Strawberry/Blueberry/Mango: 34% strawberry, 33% blueberry, 33% mango

(7) Organic Tropical Blend: 34% strawberry, 33% mango, 33% pineapple

(8) Antioxidant Blend Frozen: 30% strawberry, 20% cherry, 20% pomegranate, 15% blueberry, 15% raspberry

(9) Frozen Medley Mixed Fruit: 35% strawberry, 25% peach, 15% pineapple, 15% mango, 10% grapes

(10) Organic Green Mango Medley: 18% strawberry, 25% banana, 35% mango, 22% kale

(11) Organic Tropical Fruit and Greens: 46% pineapple, 37% mango, 8.5% spinach, 8.5% kale

(12) Organic Strawberry/Cherry/Kale: 34% strawberry, 33% cherry, 33% kale

(13) Organic Triple Berry with Kale: 27% blueberry, 20% blackberry, 23% apple, 15% raspberry, 15% kale

(14) Blueberry Blitz: 40% blueberry, 20% blackberry, 25% apple, 15% butternut squash

J.A. 10–11.

## B

This case concerns mixtures that were imported into the United States from Canada between June 6 and November 21, 2018. Customs classified the mixtures in liquidation under heading 0811 of the Harmonized Tariff Schedule of the United States (HTSUS), which covers "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." Customs classified the mixtures under the following subheadings based on the ingredients in the mixtures: 0811.90.10 ("Bananas and plantains"), 0811.90.20 ("Blueberries"), 0811.90.52 ("Mangoes"), and 0811.90.80 ("Other").

Nature's Touch protested the classifications with Customs, contending that the frozen fruit mixtures should instead be classified under subheading 2106.90.98, "Food preparations not elsewhere specified or included: . . . Other." *Nature's Touch*, 639 F. Supp. 3d at 1293. The protest was denied.

Nature's Touch initiated suit in the Court of International Trade challenging Customs' classification. Nature's Touch moved for summary judgment—seeking a determination that the mixtures are properly classified under heading 2106.90.98: "Food preparations not elsewhere specified or included"—and the government filed a cross-motion for summary judgment seeking affirmance of

Customs' classification. The trial court granted-in-part the government's motion for summary judgment.[3] *Nature's Touch*, 639 F. Supp. 3d at 1292.

The trial court entered a final decision on May 26, 2023, and Nature's Touch timely appealed on June 23, 2023. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

### A

We review the Court of International Trade's grant of summary judgment without deference. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). We review questions of law de novo and factual findings for clear error. *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1335 (Fed. Cir. 2007).

### B

Tariff classification under the HTSUS is a two-step process: first, the proper meanings of the terms of the tariff provisions are ascertained, and second, whether the subject merchandise comes within the description of those terms is determined. *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1352 (Fed. Cir. 2002). The proper meaning of the tariff provisions is a question of law, and the determination of whether the subject imports properly fall within the scope of the possible headings is a question of fact that we review for clear error. *Universal Elecs. Inc. v.*

---

[3]    The trial court agreed with the government's argued classification result for five of the mixtures, but for the other nine products, the trial court's classification resulted in a higher duty rate than the one sought by the government. *Id.* at 1310–11. The trial court denied the government's motion as to the classification of those nine products and ordered Customs to reclassify all products into 0811.90.80, HTSUS.

*United States*, 112 F.3d 488, 491 (Fed. Cir. 1997). But "when there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

The HTSUS is organized into headings, which "set forth general categories of merchandise," and subheadings, which "provide a more particularized segregation of the goods within each category." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The General Rules of Interpretation (GRIs) govern classification of merchandise under the HTSUS. *N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001). GRI 1 provides that classification should first be determined according to the terms of the headings and any associated section or chapter notes; GRI 1 takes precedence over the remaining rules. *See generally* HTSUS GRI 1. "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted). A product is classifiable under GRI 1 if it "is described in whole by a single classification heading" of the HTSUS. *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *CamelBak Prods.*, 649 F.3d at 1364).

If a product is not classifiable under GRI 1, GRI 2(b), which governs the classification of mixtures and goods consisting of two or more materials, provides that if the mixtures and combinations are potentially classifiable under two or more headings, they must be classified under GRI 3. GRI 3(a) provides that the goods should be classified under the heading that provides the most specific description, but if multiple headings each refer to part or only one of the materials or substances, they are regarded as equally

specific. Under GRI 3(b), mixtures or composite goods that cannot be classified by 3(a) are classified by the material or component which gives them their "essential character." If the goods cannot be classified under GRI 3(a) or 3(b), GRI 3(c) requires the goods to be classified under the heading last in numerical order among the headings that equally merit consideration.

To ascertain the appropriate subheading, GRI 6 directs application of GRIs 1 through 5 again at the subheading level. HTSUS, GRI 6 ("[T]he classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable.").

## III

Nature's Touch contends that classification under subheading 0811.90.80 ("Fruit . . . frozen . . . other") was improper, and that heading 2106 ("Food preparations not otherwise specified or included") more appropriately describes the mixtures. Nature's Touch also argues that if its classification is correct, the mixtures are entitled to duty-free treatment under the North American Free Trade Agreement because they underwent a shift in tariff classification and would meet the requirement of originating in the territory of a NAFTA party. Nature's Touch's Opening Br. 39–40; *see Cummins*, 454 F.3d at 1361–62 ("Under the United States' tariff laws, products that 'originate in the territory of a NAFTA party' are entitled to preferential duty treatment.").

## A

### 1

We first consider whether the trial court correctly interpreted heading 0811 ("Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or

not containing added sugar or other sweetening matter") to encompass the nine mixtures that contain only fruit. The trial court determined that, although the meaning of the term "fruit" is not discussed in the chapter notes or explanatory notes, "the common meaning of the term 'fruit' embraces mixed fruits and does not imply a limitation to individual types of fruit." *Nature's Touch*, 639 F. Supp. 3d at 1299. We agree.

"A court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss*, 195 F.3d at 1379 (internal citation omitted). The trial court properly considered the dictionary definition of "fruit," which confirmed that "fruit" has a plural meaning that denotes "fruit in general," and use of "fruit" in terms like "fruit bowl" or "fruit plate," which the trial court concluded embraces mixed fruits. *Nature's Touch*, 639 F. Supp. 3d at 1299 (citing *Fruit*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("Vegetable products in general, that are fit to be used as food by men and animals."); *Fruit,* CollinsDictionary.com, https://www.collins-dictionary.com/us/dictionary/english/fruit (last visited May 8, 2025) (noting that "[t]he plural form is usually fruit, but can also be fruits"); *Fruit*, AMERICAN HERITAGE DICTIONARY (3d ed. 1996) (plural "fruit or fruits"); *Fruit,* WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1956) ("Collectively, a dish, a selection, a diet, of fruits")). We see no error in the trial court's analysis that "fruit" properly encompasses mixed fruits.

Nature's Touch argues that nothing in the language of the heading mentions mixtures, and that the subheadings of heading 0811 all describe individual fruits or groups of specific fruits—not mixtures. The trial court properly considered the common and commercial meaning of "fruit" without resorting to an analysis of the types and qualities of fruit enumerated in the relevant subheadings. We agree that the common meaning of "fruit" describes mixed fruits,

and that therefore the frozen fruit mixtures are properly classified in heading 0811.

Nature's Touch also contends that heading 2106 ("Food preparations not elsewhere specified or included") is a more appropriate classification for the frozen fruit mixtures. Heading 2106 is a basket provision, which is a non-specific provision, and we have said that "[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *R.T. Foods*, 757 F.3d at 1354 (alteration in original) (quoting *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251 (Ct. Int'l Trade 2000), *aff'd*, 282 F.3d 1349 (Fed. Cir. 2002)). Because mixed frozen fruit is properly included in heading 0811, we need not consider whether the frozen fruit mixtures are "preparations" under heading 2106.

2

We next consider whether the five fruit and vegetable mixtures are also properly classified under heading 0811. The trial court first determined that the fruit and vegetable mixtures could not be classified under heading 0811 pursuant to GRI 1. *Nature's Touch*, 639 F. Supp. 3d at 1300. Heading 0811 is an *eo nomine* provision; *eo nomine* provisions "include[] all forms of the named article, even improved forms," as long as the product does not "possess features substantially in excess of those within the common meaning of the term." *CamelBak Prods.*, 649 F.3d at 1365 (alterations in original) (internal quotation marks omitted) (citing *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)). The trial court determined that the vegetable content of the mixtures meant that the mixtures "contain[ed] features substantially in excess of frozen fruit," because vegetables comprise between 15% and 33% of the total mixture content and "form[] a significant part of the products' commercial identity" by virtue of the reference to the vegetable content in the names of the mixtures.

*Nature's Touch*, 639 F. Supp. 3d at 1301. We agree that the mixtures cannot be classified under heading 0811 pursuant to GRI 1 because the frozen fruit and vegetable mixtures are not described in whole by the term "fruit."

We then consider whether the mixtures are properly classified under heading 2106 as a "food preparation" pursuant to GRI 1. The trial court determined that, while the fruit and vegetable mixtures are food, they are not "preparations." *Id.* at 1301–02. We agree. In *Orlando Food,* we stated that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use." 140 F.3d at 1441 (citing *Preparation*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("[A] substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences.")). A food *preparation* must accordingly undergo additional processing beyond what is already inherently encompassed within the term "food."

Nature's Touch contends that there is a "considerable amount of 'preparation'" in readying the mixtures, including cutting, sifting out inedible materials, cleaning, freezing, and mixing the fruits and vegetables. Nature's Touch's Opening Br. 36. We do not agree that these processes are sufficient to render the fruit and vegetable mixtures a "preparation."

The Explanatory Note to heading 2106 provides an example of a food preparation, and describes it as:

> Mixtures of plants, parts of plants, seeds or fruit (whole, cut, crushed, ground or powdered) of species falling in different Chapters (e.g. Chapters 7, 9, 11, 12) or of different species falling in heading 12.11, *not consumed as such*, but of a kind used either directly for flavouring beverages or for preparing extracts for the manufacture of beverages.

Explanatory Note 21.06 (15) (emphasis added). We read this to explicitly exclude cut plant material that is "consumed as such" from being a "preparation." Since we conclude that the cut and mixed fruit and vegetables are "consumed as such," cutting and mixing the fruit and vegetables is insufficient to create a "preparation." We also agree with the trial court that cleaning, sorting, and inspecting food products is inherent to processing commercial food products, and therefore insufficient to constitute "preparation." *Nature's Touch*, 639 F. Supp. 3d at 1302.

Nature's Touch also alleges that freezing the fruit products is sufficient to result in a "preparation," as "frozen fruit mixes are . . . indisputably distinct articles from the product in its raw form." Nature's Touch's Opening Br. 37. We disagree. The structure of the HTSUS supports that frozen food is not prepared food in a tariff sense. Chapters 7 and 8 contain frozen fruit and vegetables. Chapter 20 covers "Preparations of vegetables, fruit, nuts or other parts of plants" and specifically excludes fruits and vegetables that have been "prepared or preserved by the processes specified in chapter 7, 8, or 11." HTSUS, Ch. 20, Note 1(a). If freezing food is "preparing" it, as Nature's Touch argues, the freezing process should be excluded from Chapter 20. Yet Chapter 20 contains frozen products, which leads us to conclude that HTSUS does not consider freezing food to mean preparing food. *See R.T. Foods*, 757 F.3d at 1356–57 (conducting the same analysis to conclude that frying vegetables did not constitute preserving or preparing vegetables).

Further, the Customs Court and the Court of International Trade have repeatedly held that freezing food alone is not sufficient to prepare it. *Frosted Fruit Prods. Co. v. United States*, 18 Cust. Ct. 119, 121 (1947) (holding that trimmed, cleaned, frozen, and packed guavas "are not 'prepared' in a tariff sense"); *Interocean Chem. & Minerals Corp. v. United States,* 715 F. Supp. 1093, 1096 (Ct. Int'l Trade 1989), *aff'd sub nom. Interocean Chem. & Mineral*

*Corp. v. United States*, 898 F.2d 1577 (Fed. Cir. 1990) ("[I]t has been held that freezing, being a temporary preservation[,] is neither a preparation nor a preservation for tariff purposes."); *U.S. v. Conkey & Co.*, 12 U.S. Cust. App. 552, 554, 556 (Ct. Cust. App. 1925) (concluding that, even though "frozen lamb is not fresh lamb," "frozen lamb and fresh lamb are so similar in material, quality, texture, and use" that frozen lamb "may be classified as fresh lamb"); *see also Crawfish Processors All. v. United States*, 431 F. Supp. 2d 1342, 1348–49 (Ct. Int'l Trade 2006) (noting that "*Frosted Fruit* made it clear that more is necessary than freezing to make something prepared or preserved" (emphasis added)).

We conclude that the fruit and vegetable mixtures cannot be classified under heading 2106 as a "food preparation" because they are not "prepared" in a tariff sense. Because neither heading 0811 nor heading 2106 describe the fruit and vegetables mixtures in whole, we turn to GRI 3 to classify the fruit and vegetable mixtures.

The trial court determined that, under GRI 3(a), both heading 0811 ("Fruit . . . frozen") and heading 0710 ("Vegetables . . . frozen") each referred to part of the mixtures, which means that the headings are both equally specific. The trial court then turned to GRI 3(b) and concluded that "[b]ecause the fruit-and-vegetable mixtures contain between 67% and 85% frozen fruit ingredients by weight, . . . the fruit ingredients predominate and impart the essential character of these mixtures." *Nature's Touch*, 639 F. Supp. 3d at 1305. We agree. Essential character may be determined by "the nature of the material or component, its bulk, quantity, weight or value." HTSUS, GRI 3(b), Explanatory Note VIII. Further, Nature's Touch repeatedly refers to all fourteen mixtures as "fruit mixtures." *See, e.g.*, Nature's Touch's Opening Br. 3 ("[T]here are fourteen (14) frozen fruit mixtures at issue in this case"); *id.* at 31 ("[T]he fourteen different frozen fruit mixtures at issue in this action"); *id.* at 35 ("[T]he fourteen frozen fruit mixtures"). We

conclude that the essential character of the fruit and vegetable mixtures is fruit, and that the five fruit and vegetable mixtures are properly classified under heading 0811.

## B

We next consider whether the trial court correctly classified the mixtures into subheading 0811.90.80 ("Other"). The applicable subheadings under heading 0811 are:

> 0811: Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:
>
>> 0811.10: Strawberries: 11.2%
>>
>> 0811.20: Raspberries, blackberries,
>>
>> mulberries . . . 4.5–9%
>>
>> 0811.90: Other:
>>
>>> 0811.90.10: Bananas and plantains: 3.4%
>>>
>>> 0811.90.20: Blueberries: Free
>>>
>>> 0811.90.52: Mangoes: 10.9%
>>>
>>> 0811.90.80: Other: 14.5%

HTSUS, 0811. The trial court first applied GRI 1 at the six-digit subheading level, and then again at the eight-digit subheading level. The trial court determined that "other" was the most appropriate six-digit, and then eight-digit, subheading, because "other" means "none of the above." *Nature's Touch*, 639 F. Supp. 3d at 1307. While we agree that the trial court's classification into "other" was correct, we do not read "other" as meaning "none of the above." "Other" is a residual or basket subheading and is more appropriately understood as meaning "none of the preceding categories." *See Rollerblade*, 282 F.3d at 1354 (stating that residual subheadings such as "other [sports equipment]"

are "intended as a broad catch-all to encompass the classification of articles for which there is not a more specifically applicable subheading") (alteration in original) (quoting *EM Indus. v. United States*, 999 F. Supp. 1473, 1480 n.9 (Ct. Int'l Trade 1998)). "None of the above" suggests that the articles are not described at all by the preceding categories. "None of the preceding categories" is a more appropriate reading because the articles may be described *in part* by the categories above. Here, for example, some mixtures contain strawberries. Reading "other" as "none of the above" would suggest that none of the mixtures contain strawberries. It is more appropriate to conclude that none of the preceding categories apply—the category of "strawberries" does not accurately describe in whole the mixtures containing strawberries because they contain other ingredients as well. We conclude that "other" should be read as a broad, residual catch-all provision meaning "none of the preceding categories," and that the "other" categories at both the six- and eight-digit subheadings appropriately classify the mixtures as none of the preceding categories at either level are wholly applicable.

C

Because we have concluded that the mixtures did not undergo a shift in tariff classification, we need not consider whether the mixtures are entitled to preferential duty-free treatment under NAFTA.

IV

We have considered Nature's Touch's remaining arguments and find them unpersuasive. Because the mixtures are properly classified under subheading 0811.90.80 ("Fruit . . . frozen . . . other"), we affirm.

**AFFIRMED**